# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BARRY LAMON,

Plaintiff,

v.

JOHN TILTON, et al.,

Defendants.

/

CASE NO. 1:07-cv-00493-AWI-DLB (PC)

ORDER DISMISSING PLAINTIFF'S COMPLAINT AND REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT WITHIN THIRTY DAYS

(Doc. 1)

I. Screening Order

A. Screening Requirement

Plaintiff Barry Lamon ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on March 29, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious;" that fail to state a claim upon which relief may be granted; or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). " 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.' " Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

B. Summary of Plaintiff's Complaint

Plaintiff is an inmate housed at the California Department of Corrections and Rehabilitation State Prison in Corcoran. Plaintiff names as defendants: CDC Director John Tilton; Warden Darral Adams; Asst. Warden's James D. Hartlay and R. Lopez; Facility Captain M. Jennings; Inmate Appeals Coordinators L. Cano, V. Castillo, and J. Jonas; Sergeants R. Salinas, Jr., Roberts, Laona, and J. Martinez; CCI's S. Rocha, L. Billiou, Rodriguez, and I Garza; Correctional Officers F. Yamat, J. Munoz, J. Alvarez, K. Elza, K. Frescura, Cortez, B. Vikjord, Hamilton, Van Zant, Magnass, Aspieda, Wilber, Price, H. Luna, P. Brandon, Beltran, J.G. Thomas, M. Castro, I. Hernandez, and I. Vargas; MTA's Raynoso and Gonzales; and Dr. Salkowitz. Plaintiff is seeking money damages, injunctive, and other equitable relief.

Because plaintiff sets forth all of his factual allegations in narrative form and then lists separately the rights which he believes were violated, it is difficult to ascertain with any precision the bases for plaintiff's claims results. In his complaint, plaintiff alleges that he was threatened, injured physically and mentally, and his well-being intentionally placed in jeopardy in retaliation against plaintiff for exercising his constitutional rights. Plaintiff appears to allege that, in retaliation for his being the defendant in criminal proceedings for battery on a non-inmate and for

his filing of a request for an order of protection and seeking relief from violations of his constitutional rights, the various named and unnamed defendants have engaged in the following acts: tainting plaintiff's food with medication; moving plaintiff into known enemy prison populations of "Southern Mexicans" and white inmates; attempting to have plaintiff killed; tampering and/or otherwise interfering with plaintiff's correspondence with the court(s); confiscation and/or vandalizing plaintiff's legal documents; pilfering information and misconstruing it so as to justify deliberate errant classification of plaintiff's departmental files and custody status; providing extra favors, food and privileges to plaintiff's inmate neighbors so as to secure their ignoring plaintiff's complaints of property theft, food tainting, and the like; fostering, promoting, and encouraging racial bias, animosity and discrimination against plaintiff; failing to maintain an accurate record of plaintiff's allegations/appeals; failing to maintain accurate medical records so as to justify wrongful classification of plaintiff as being mentally ill; providing plaintiff with only one third to one half of the daily servings of food; and keeping plaintiff in protective custody against his will.

C. Plaintiff's Section 1983 Claims

Aside from his claim of retaliation, it is difficult at best, for the court to ascertain which legal claims plaintiff is attempting to pursue. Based on the allegations in plaintiff's complaint, he may be able to state some claims for relief under section 1983. However, a number of the events complained of by plaintiff, as plead, do not rise to the level of constitutional violations.

The court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a) and sets forth for each defendant, *as briefly as possible*, what action that defendant took or failed to take and why (e.g., to retaliate against plaintiff for litigating in court or for filing inmate grievances). In the subsections that follow, the court will provide plaintiff with the legal standards that appear to be applicable. Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.

1. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes

> to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff has named dozens upon dozens of defendants in this action and has made numerous allegations against Does 1 through 50, "unnamed defendants 1 through 50 and each of them," and "other unnamed defendants." In order to proceed under section 1983, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff retaliation against plaintiff for either litigating in court, or filing inmate grievances. Plaintiff is cautioned that in his amended complaint, he must clearly identify what actions or omissions led to the violation of his rights and which defendants were responsible for the acts or omissions.

2. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff has stated allegations sufficient to meet the first four Rhodes requirements. However, he did not make any allegations as to whether the acts complained of reasonably advanced a legitimate correctional goal.

///

3. Medical Care

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Commr's, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff has not alleged any facts which would support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). Further, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v.

Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Plaintiff has failed to allege that Dr. Salkowitz chose a course of treatment that was medically unacceptable under the circumstances and that such course was chosen in conscious disregard of an excessive risk to plaintiff's health.

4. Excessive Force

Plaintiff appears to be alleging that excessive force was used against him at various times throughout the course of events he states in his complaint. The court however, is unable to ascertain any specific facts constituting acts of excessive force in plaintiff's allegations. Plaintiff state various conclusions (i.e. ". . . more than one-thousand (1,000) counts of assault & battery") without linking forceful act(s) to any defendant(s). Doc 1, page 31, line 12.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation

of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Plaintiff has not alleged specific actions against any defendant to show malicious or sadistic intent, wanton and unnecessary force, or failure to intercede on his behalf.

5. Conditions of Confinement

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate

health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Plaintiff appears to have adequately stated one claim for relief under section 1983 for violation of the Eighth Amendment in as much as he alleges that defendants Luna, Price, Wilber, Vikjord, Aspieda, Magnas, Vanzant, Hamilton, Cortez, Frescura, Elza, Alvarez and Hernandez deliberately served him meals of only one third to one half of the regular daily portions and that such meals were pan-scrapings, crumbs, remnants, and scraps rather than full entrees and side dishes as served to the other inmates.

Plaintiff makes other allegations regarding his conditions of confinement that, while not yet adequate, may be able to be amended so as to adequately state additional cognizable claims for relief under section 1983 for violation of the Eighth Amendment.

Plaintiff is reminded that his allegations must also indicate that any defendant actors were deliberately indifferent to a substantial risk of serious harm to plaintiff. Frost, 152 F.3d at 1128.

6. Inmate Appeals Process & Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of

action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Defendants' actions in responding to plaintiff's appeal, alone, cannot give rise to any claims for relief under section 1983 and plaintiff has not alleged any other facts on this issue that demonstrate a violation of his rights under federal law.

7. Classification

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Prisoners have no liberty interest in their classification status or in their eligibility for rehabilitative programs. See Moody v. Daggett 429 U.S. 78, 88 n.9 (1976); Frost v. Agnos, 152 F.3d 1124 (9th Cir. 1998); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).

Assuming that being kept in protective custody against a prisoner's will implicates a liberty interest, Koch v. Lewis, 216 F.Supp.2d 994, 1002 (D. Ariz. Aug. 30, 2001), plaintiff has not alleged any facts demonstrating that he was denied any of the procedural due process protections he is guaranteed under federal law.

A segregated prisoner is entitled to adequate notice, an opportunity to be heard, and periodic review. Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986); Koch v. Lewis, 216 F.Supp.2d at 1003; Morris v. Cambra, No. C 96-0334 SI, 1997 WL 811774, at *3 (N.D. Cal. Dec. 15, 1997); Hart v. Cambra, No C 96-0924 SI, 1997 WL 564059, at *4 (N.D. Cal. Aug. 22, 1997). In addition, "there must be 'some evidence in the record' to support the decision to segregate the inmate," and this evidence "must have 'some indicia of reliability.'" Koch, 216 F.Supp.2d at 1003 (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

Due process requires notice of the charges that have been leveled against one. Toussaint, 801 F.2d at 1100-01.

Plaintiff does not allege that he had no notice that he was being placed in protective custody, nor is the court able to ascertain whether such placement was initially against his will. Due process requires only that the prisoner be informed of charges against him, or reasons for segregation. Id. Due process does not require detailed written notice or a written decision describing the reasons for placement. Id. Thus, prison officials are not required to issue plaintiff written notice in order to satisfy due process.

The only allegations set forth by plaintiff that might give rise to a due process claim are his apparent contentions that the evidence does not support the decision to continue his placement in protective custody; segregation that might have taken place as a result of his classification as mentally ill; and his being placed in a cell amongst Southern Mexican and White inmates. It is also not apparent whether plaintiff's initial placement in protective custody was

voluntary or involuntary. Plaintiff must also link one or more named defendants to the deprivations. While plaintiff describes activities of various named defendants' during his confinement in protective custody, the court is unable to distinguish which defendants plaintiff feels were responsible for his continuation in protective custody and/or classification as mentally ill. In order to pursue a claim under section 1983 based on an evidentiary or procedural challenge, plaintiff must allege facts linking the evidentiary or procedural deficiencies to the individual(s) who made the decisions he complains of.

The court is also unable to ascertain whether plaintiff is making any claims regarding reviews (or lack thereof) as to his continued protective custody status. Plaintiff is advised that, to do so, he must name the individuals responsible for providing him with reviews that were meaningless and/or allege some facts linking defendants in supervisory positions to the enactment or enforcement of a policy so deficient that the policy 'itself [was] a repudiation of constitutional rights' and was 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court is unable to ascertain whether plaintiff alleges that his classification as mentally ill was used as a basis for continuing his protective custody. Because prison officials must have means of protecting and controlling suicidal and mentally ill inmates, temporary placement of prisoners in "safety cells" – even where the cells were small, dark, and scary – does not violate the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1313-1315 (9th, Cir. 1995).

As to his placement in protective custody, plaintiff does not allege the time frame, nor sufficient conditions thereof for the court to delineate whether such continued involuntary custody violated his Eighth Amendment rights. Plaintiff also does not specify what, if any administrative segregation occurred, and which defendant(s) directed it, as a result of his mentally ill classification.

Plaintiff's placement amongst a population of Southern Mexicans and Whites would probably not rise to administrative segregation and would be more appropriately pursued by

plaintiff under the elements applicable to the prison official's failure to protect him as discussed at "10. Failure to Protect" herein below.

8. Access to the Courts

Plaintiff alleges that, on more than ten occasions, defendants Vanzant, Hamilton, Cortez, Mnagnass, Aspieda, J. Alvarez, K. Elza, H. Luna stole plaintiff's mail from the court, his legal work -product, research notes and evidentiary materials related to his lawsuits and legal claims, and that on more than fifteen occasions defendants Vikjord, Price, Wilber, Frescura and Hernandez failed to mail his correspondence directed to state and federal courts and have censored all of his incoming and outgoing mail to the courts.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions,, and civil rights actions. Id. at 354. Claims for denial of, or interference with, access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). To prevail on his claim, plaintiff must show that he suffered an actual injury by being shut out of court. Id. at 415; Lewis, 518 at 351.

Plaintiff alleges that the thefts (of his mail from the court, legal work-product, research notes and evidentiary materials) were targeted at "critical or controversial material mentioned in or demanded by the judges" in his actions filed to seek relief from prison official interference with the prosecution of his pending actions. Plaintiff fails to allege an actual injury (litigation opportunity yet to be gained, or loss of a meritorious suit that cannot now be tried) from any of the defendants' actions. Thus, plaintiff fails to state a cognizable claim for interference with his access to the courts.

9. Mail Interference

a. Personal Correspondence

On page 31 of his complaint, under the subheading "VIII. Statement of Damages," plaintiff generally asserts that he was denied his mail from friends, family and religious leaders.

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff fails: to attribute interference with his personal mail to any specific defendant(s); to state any specific facts relating to such alleged denials of mail; and to identify the regulation (if any) that such denials were auspiciously conducted under.

b. Mail to and from the Courts

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987). Thus, plaintiff does not have a protected interest in not having his mail to and from the court's opened and examined by prison officials.

Plaintiff is referred to the discussion above under "8. Access to the Courts" for the thefts of plaintiff's mail to and from the courts as possible interference with his access to the courts.

10. Failure to Protect

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834.

To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

To grant injunctive relief concerning serious risks to the inmate's safety, the court must find that at the time the relief will be granted there is still a serious, present risk to the inmate and that the prison officials are still acting with deliberate indifference to that risk. Farmer, 511 U.S. at 845-47; see also Helling v. McKinney 509 U.S. 25, 35-36 (1993) (discussing injunctive relief where there is a threat of harm to inmate's health).

The Ninth Circuit has held that placing a pre-operative transsexual, who acts and dresses effeminately, in the prison's general population evidenced of deliberate indifference to an inmate's safety. Farmer, 511 U.S. at 848-49; cf. Redman v. County of San Diego, 942 F.2 1435, 1444-45 (9th Cir. 1991)(en banc)(concluding that placing a young pre-trial detainee in a cell with a known aggressive sexual offender was deliberate indifference to the detainee's safety). The Ninth Circuit has also held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates were sufficient to state a claim of deliberate indifference to an inmate's safety. See Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989). But see also Morgan v. MacDonald 41 F.3d 1291, 1293-94 (9th Cir. 1994) (rejecting Eighth Amendment claim where prisoner who had been labeled a snitch had not been retaliated against).

Plaintiff alleges that on September 12, 2006, defendants Roberts, J. Alvarez, Hamilton, Fernandez, and Austin "duped" him into exiting his cell, stripped his cell, and involuntarily moved him to "... cell 4B2L-24 for the purpose of isolating him among 'Southern Mexicans' and white inmates, a demographic of California State Prisoners that are the long avowed and departmentally-recognized enemies of African American inmates." Doc. 1, pg. 27.

However, plaintiff fails to state whether he is still amongst a hostile inmate population and whether he was retaliated against, or injured, as a result of such placement. Therefore, plaintiff has failed to state a claim for violation his Eighth Amendment right for failure to protect him from harm.

11. Due Process – Property

On page 31 of his complaint, under the subheading "VIII. Statement of Damages," plaintiff generally asserts that he has been damaged via "loss of property." Elsewhere in the complaint, plaintiff also alludes that his personal property was taken, destroyed, and/or vandalized.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Plaintiff has failed: to allege sufficient facts for the court to determine whether the deprivation was authorized or unauthorized; if authorized, to allege any facts suggesting that he was deprived of due process; and to link any such conduct to a named defendant. As long as plaintiff was provided with process, prison officials may deprive him of his property.

12. Due Process – Liberty

Plaintiff appears to attempt to claim that he has been deprived of a protected liberty interest (possibly via: continued confinement in protective custody; his classification as mentally ill if any segregation was associated therewith; his placement amongst a known hostile inmate population; and tainting of his food with medication) without due process of law.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in remaining in the general population, see Sandin v. Conner 515 U.S. 472, 485-86 (1995) and Hewit, 459 U.S. at 468 or in not losing privileges, Baxter v. Palmigiano 425 U.S. 308, 322 (1976). The Court has held that prisoners may be treated with anti-psychotic drugs against their will if they are a threat to themselves or others and the treatment is in the prisoner's medical interest. See Washington v. Harper, 494 U.S. 210, 227 (1990).

However, when a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 473. Administrative segregation is a catch-all phrase for any for of non-punitive segregation. For example, prisoners may be segregated to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt, 459 U.S. at 468.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff has failed to establish the existence of a liberty interest that he has been deprived of without due process of law.

13. Supervisory Liability Claim

Under section 1983, liability may not be imposed on supervisory personnel for the actions

of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

As to each defendant in a supervisorial position, plaintiff must allege facts giving rise to a claim for relief under section 1983. Plaintiff states general allegations against the named defendants in supervisorial positions on pages 15 through 18 of his complaint. Plaintiff thereafter sets forth his factual allegations in narrative form and then lists separately the rights which were allegedly violated. While plaintiff may be able to state cognizable claims for relief against the named defendants in supervisorial positions under section 1983, the court is unable to identify any such claims due to the manner in which plaintiff's complaint is organized.

D. State Law Claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because plaintiff may be able to state a claims for relief under section 1983, the court reserves discretion to exercise supplemental jurisdiction over and to address plaintiff's state law claims after plaintiff files his amended complaint so as to allow plaintiff opportunity to state cognizable claims for relief under section 1983.

II. Conclusion

For the reasons set forth above, plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.

Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;

2. The Clerk's Office shall send plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, plaintiff must either:

a. File an amended complaint curing the deficiencies identified by the court in this order, or

b. Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims identified by the court as viable/cognizable in this order; and

4. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:** **January 25, 2008**

/s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE